IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MELODY CHARMAINE WHITSETT, | § § § | |
| Plaintiff, | § § | |
| v. | § § § | CIVIL ACTION NO. 1:17-cv-05845 |
| | § § | |
| NATIONAL CREDIT ADJUSTERS, LLC | § § § | |
| Defendant. | § § | |

## AFFIDAVIT OF NICHOLAS D. MOORE

**STATE OF KANSAS**

**COUNTY OF RENO**

1. Before me, the undersigned authority, personally appeared Nicholas D. Moore, who, being by me duly sworn, deposed as follows:

2. My name is Nicholas D. Moore. I am of sound mind and capable of making this affidavit, and the facts contained herein are true and correct and within my personal knowledge. I am employed as Associate In-House Counsel of National Credit Adjusters LLC ("NCA").

3. NCA has good cause for not timely filing an Answer in this matter.

4. Due to an innocent docketing error, NCA failed forward this suit to its outside counsel in a timely manner. NCA's legal secretary responsible for docketing case deadlines left NCA in the middle of July 2017. Thereafter, NCA's chief legal officer was out of state attending the death of a family member and was accordingly unable to replace the legal secretary during the relevant periods associated with the deadline in this case. For these reasons, the answer deadline

was not adhered to in this matter.

5. Once it received notice of the entry of default, NCA realized that it had failed to docket and forward this matter to its outside counsel, who was never made aware of the suit until after this Court's entry of default.

6. Therefore, NCA's failure to file an Answer was due to inadvertence rather than a conscious decision.

7. NCA took quick action to correct its mistake.

8. On October 12, NCA became aware that Plaintiff was seeking entry of a final default judgment.

9. On that same day, NCA forwarded the filed to its outside counsel who began drafting an Answer and Motion to Set Aside Default Judgment.

10. On October 27, 2017, the Answer and Motion were filed with the Court.

11. NCA's records, account notes and call recordings indicate that the factual basis for Plaintiff's claims are incorrect. Plaintiff alleges that NCA continued calling Plaintiff after Plaintiff had instructed Plaintiff to discontinue calling or that the calls were inappropriately voluminous. (Doc 1. ¶s 25-39).

12. The entirety of NCA's recordings of calls to Plaintiff demonstrate that Plaintiff never instructed Defendant to discontinue calling her.

13. NCA's call records further reflect that calls to Plaintiff by NCA did not begin until November 21, 2016, while Plaintiff alleges the calls began in the summer of 2016.

14. NCA's call records indicate that a total of only eighteen (18) calls were made to Plaintiff, occurring between November 21, 2016 and April 6, 2017.

15. NCA never called Plaintiff more than once in any day and did not contact Plaintiff

in any consecutive days throughout the period of calls.

16. During NCA's first phone contact with Plaintiff on December 5, 2017, Plaintiff indicated that she did not have money to pay, but promised to call back and pay as soon as she had money to do so.

17. On January 11, 2017, during a telephone call with Plaintiff on the subject cellular telephone, Plaintiff instructed NCA to call her between 12 and 5 pm in the future to arrange payment.

18. NCA's call recordings further reflect that NCA did not make demeaning or harassing comments to Plaintiff during any contact and Plaintiff repeatedly indicated that she would call back and pay when she had the money during the phone contact with her.

19. Accordingly, NCA has meritorious Defenses to Count I of Plaintiff's Complaint which is based solely on the false allegation that NCA engaged in voluminous calls to Plaintiff after Plaintiff instructed the calls to cease.

20. NCA has meritorious defenses to Count II (TCPA) of Plaintiff's Complaint because NCA did not use an automated dialing system to contact Plaintiff's cellular phone.

21. As for Plaintiff's TCPA claims, NCA does not use an automatic telephone dialing system as defined by the TCPA.

22. Calls made on Plaintiff's account either by manually dialing the calls by a representative of NCA or were made using Livevox HCI.

23. Livevox HCI is a system that requires direct human intervention to place all calls. It does not have the capacity to store or produce telephone numbers using a random or sequential number generator, or to dial such numbers without human intervention. All calls regarding Plaintiff's account were placed using Livevox HCI

FURTHER, AFFIANT SAYETH NOT.

_____
NICHOLAS D. MOORE

SWORN TO AND SUBSCRIBED to me on the 2) day of October, 2017

4